**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                           PLAINTIFF

v.                                          No. 4:06CR00053 JLH

EYAD HASSAN
LINDA HASSAN                                                                       DEFENDANTS

<u>**OPINION AND ORDER**</u>

Eyad and Linda Hassan, along with four persons related to them, have been indicted for

structuring financial transactions to evade reporting requirements and for conspiring to do so. The

government has filed a motion for protective order to preserve a convenience store owned by

defendants Eyad and Linda Hassan and for a writ of entry. The Hassans object to the government's

motion. The Hassans also move for the release of cash previously seized by the government from

the Hassans' home and the home of two co-defendants. For the following reasons, the government's

motion is denied, and the Hassans' motion is granted in part and denied in part.

**I.**

The FBI has investigated Eyad and Linda Hassan and four members of their extended family

– Fuad Hasan, Hanan Hasan, Sahar Alabed Kattom, and Amjad Mutie Kattom – on suspicion of

conspiring to transfer large amounts of money outside of the United States in such a manner as to

evade reporting the transactions as required by federal law. An affidavit of an FBI agent who

participated in the investigation describes the activities and the circumstances of the alleged scheme.

This affidavit was submitted in support of the government's motion. According to the affidavit, a

person who purchases from a financial institution an official check in the amount of $3,000 or more

must submit identification to assist the bank with filing a Monetary Currency Transaction Report

("MCTR").  The affidavit states that all six of the defendants purchased numerous official checks from various banks in amounts just below $3,000.  The affidavit describes one transaction in which Linda Hassan entered a Regions Bank with a paper sack containing a post-it note and cash in the amount of $2,971.  The post-it note said "To: Rana Naji," "From: Aisha Ahmad," "$2965.00."  After charging Linda Hassan $6.00 for the official check, the bank teller made the check for $2,965.00 payable to Rana Naji and showed the remitter as Aisha Ahmad.  The FBI agent asserts that all of the checks purchased by Linda Hassan have been negotiated overseas.  The affidavit further states that, according to a report filed by Regions Bank with the FBI, "Linda Hassan also has a pattern of depositing cash in amounts just below the MCTR $10,000 threshold."  These cash deposits went into an account for the Markham Food Mart, which is owned by Eyad and Linda Hassan.

The affidavit also states, "Linda and Iyad [sic] Hassan and Fuad and Hanan Hasan are living and conducting financial transactions at levels that are not commensurate with their reported income."  Specifically, both couples have monthly automobile and mortgage payments that apparently exceed their ability to pay based upon their reported incomes on their income tax returns.

In November 2005, the FBI executed search warrants and seized $101,054 from Eyad and Linda Hassan's home and $2,460 from Fuad and Hanan Hasan's home.  About four months later, all six targets of the FBI's investigation were indicted on charge of structuring financial transactions to evade reporting requirements in violation of 31 U.S.C. §§ 5324 and 5325 and conspiracy to structure financial transactions to evade reporting requirements in violation of 18 U.S.C. § 371.[1]

The government now seeks a pretrial protective order and a writ of entry regarding a

---

[1]  Eyad and Linda Hassan are also charged with health care fraud in violation of 18 U.S.C. § 1347.  Fuad and Hanan Hasan are also charged with bulk cash smuggling in violation of 31 U.S.C. § 5332.  These charges are not relevant to the motions now before the Court.

convenience store, the University One Stop at 7300 South University, Little Rock, Arkansas, owned by Eyad and Linda Hassan.  The government contends that this convenience store is subject to forfeiture due to the Hassans' alleged violations of 31 U.S.C. §§ 5324 and 5325 and 18 U.S.C. § 371. The government asks that the Hassans be restrained from alienating the property or impairing its value.  The government also contends that the cash seized is subject to forfeiture and is therefore subject to pretrial restraint.  The Hassans argue that neither the convenience store nor the cash can be forfeited even if they are convicted, so those assets are not subject to pretrial restraint.  The Hassans argue that the government in fact seeks pretrial restraint of substitute assets, which the government denies.  The Hassans oppose the government's motion for protective order and have moved for the release of the cash that was seized on November 25, 2005.

The Court held a hearing on June 23, 2006, regarding these motions.  After hearing arguments and taking evidence on the matter, including the testimony of Linda Hassan, the Court asked the parties to submit additional briefs.  The parties have done so.  The government also has moved for this Court to reopen the hearing to receive evidence that Eyad Hassan did not pay taxes on the money that was seized from his home.  The Hassans oppose the motion to reopen the hearing on the grounds that the government has closed its proof and the defendants are not charged with a tax offense.  Whether Eyad Hassan paid taxes on the seized currency is not relevant to the issues presently before the Court.  Accordingly, the government's motion to reopen the hearing is denied.

## II.

As noted above, the Hassans are charged with structuring financial transactions in violation of 31 U.S.C. § 5324 and with conspiracy to commit this crime.  The applicable criminal forfeiture statute, 31 U.S.C. § 5317(c)(1), provides in pertinent part:

3

The court in imposing sentence for any violation of section . . . 5324 of this title, or any conspiracy to commit such violation, shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto. . . . Forfeitures under this paragraph shall be governed by the procedures established in [21 U.S.C. § 853].

Section 853 provides for pretrial restraint of property that would be subject to forfeiture in the event of conviction. After an indictment has been filed, "the court may enter a restraining order or injunction . . . or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture . . . ." 21 U.S.C. § 853(e)(1). Subsection (a), in turn, provides that property subject to forfeiture includes "property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the criminal offense and "property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . . ." 21 U.S.C. § 853(a). In other words, a defendant's property is subject to pretrial restraint under § 853(e) only if the property was obtained as a result of the crime or used to facilitate commission of the crime. *Cf. United States v. Field*, 62 F.3d 246, 248-49 (8th Cir. 1995).

We bear in mind that "[p]reconviction restraints are extreme measures." *United States v. Riley*, 78 F.3d 367, 370 (8th Cir. 1996). *See also United States v. Razmilovic*, 419 F.3d 134, 137 (2d Cir. 2005) (noting that the Supreme Court has dubbed pretrial restraint as a "'nuclear weapon' of the law"); *United States v. Ripinsky*, 20 F.3d 359, 363 n.5 (9th Cir. 1994) ("Given the partly punitive nature of § 853, we must be cautious about construing § 853 liberally.").

The Hassans contend that the only property involved in the alleged money structuring offenses was the money sent overseas. Because that money is now unavailable to the government, the Hassans argue, the government is trying to seize their cash and their convenience store as

4

"substitute assets," i.e., assets of equivalent value taken in place of property used in the commission of a crime. While substitute assets are subject to forfeiture upon conviction in some circumstances, they are not subject to pretrial restraint under § 853(e). *Field*, 62 F.3d at 248-49.

The government argues, however, that the cash and the convenience store are not substitute assets but assets actually involved in the offenses and therefore subject to pretrial restraint. As to the convenience store, the government contends that the Hassans and the other defendants used the store to generate revenue used to purchase the checks in structured amounts. As to the cash seized from the defendants' home, the government argues that the defendants generated these funds from the convenience store and planned to use them to structure more financial transactions illegally.

**A.     The convenience store was not "involved in" or "used to facilitate" the alleged money structuring offenses.**

In support of its position, the government cites three cases in which federal courts of appeal have held that a defendant's property was subject to forfeiture as property "involved in" the alleged offense. As explained below, however, those cases are factually distinguishable from this one in several crucial respects.

In *United States v. Hawkey*, 148 F.3d 920 (8th Cir. 1998), a county sheriff was convicted of various offenses in connection with his misuse of funds belonging to the sheriff's department and the sheriff and deputies' association. The district court ordered the forfeiture of $140,450.08 in misappropriated funds and a motor home that had been purchased in part with misappropriated funds. *Id.* at 927. Affirming the district court, the Eighth Circuit explained that the motor home was forfeitable because it was "traceable" to the crime inasmuch as the purchase of the motor home was made possible by the use of misappropriated funds. *Id*. at 927-28. Forfeiture of the motor home was proper even though the value of the property at the time of forfeiture exceeded the amount of

misappropriated funds used in the purchase.  *Id.* at 928.

This case is different.  The motor home in *Hawkey* was purchased in part with stolen funds. Property purchased with stolen funds is subject to pretrial restraint under the terms of § 853 as "proceeds" of or property "derived from" the underlying crime.  The government has presented no evidence that the Hassans' convenience store was purchased with proceeds of criminal activity or otherwise illegally obtained.

The government argues, however, that the convenience store is subject to forfeiture under § 853 as property used "to facilitate the commission of" the alleged money structuring offenses. Property facilitates a crime when it "'makes the prohibited conduct less difficult or more or less free from obstruction or hindrance.'"  *See United States v. Huber*, 404 F.3d 1047, 1060 (8th Cir. 2005) (quoting *Hawkey*, 148 F.3d at 928).  To support a forfeiture under § 853(a)(2), however, "there must be 'something more than an incidental or fortuitous contact between the property and the underlying illegal activity, although the property need not be indispensable to the commission of' the offense." *United States v. Lewis*, 987 F.2d 1349, 1356 (8th Cir. 1993) (quoting *United States v. Premises Known as 3639-2nd Street, N.E., Minneapolis, Minn.*, 869 F.2d 1093, 1096 (8th Cir. 1989)).

The government reasons that the Hassans' use of the convenience store to generate the revenue that was used to purchase the checks "certainly 'facilitated' the structuring offense by making it 'less difficult or more or less free from obstruction or hindrance.'"  At first blush, this argument has some appeal – the structuring offenses could not have been committed without money. However, the government cites no case, and the Court has found none, in which a defendant in a structuring case was required to forfeit the means by which the funds used in the structured transaction were obtained.  The cases relied upon by the government, *United States v. Wyly*, 193 F.3d

289 (5th Cir. 1999), and *Huber*, are factually distinguishable from this case, as explained below. Moreover, *Huber* supports the Hassans' position that the mere use of the convenience store to generate funds does not provide a sufficient nexus to the alleged offense to require that the store be forfeited.

In *Wyly*, the defendants were convicted of several offenses in connection with a bribery scheme. The defendants conspired with a sheriff to build a private prison facility, lease their prison to the sheriff's department, and secretly funnel part of the proceeds to the sheriff in return for his sponsorship of the private prison. *Wyly*, 193 F.3d at 292-93. On appeal, the defendants challenged the forfeiture of the prison, arguing that only the funds paid to the sheriff were forfeitable. *Id.* at 302. The Fifth Circuit held that the prison was properly forfeited, however, because it was "the source of the criminal proceeds." *Id.*

This case differs fundamentally from *Wyly* in that the Hassans' convenience store was not the source of "criminal proceeds." The prison in *Wyly* was built and the lease signed as part of an illegal conspiracy part of which included bribing the sheriff, without whose cooperation the sheriff's department would not have signed the lease. *Id.* at 292-93. "Without the prison, there could have been no bribery, mail fraud, or money laundering." *Id.* at 302. The Hassans, however, are not charged with bribing anyone or with committing mail fraud to obtain the convenience store, nor are they charged with operating their convenience store illegally. Even if some of the funds legally generated by the store were sent overseas in amounts designed to avoid the reporting requirements, the store itself was not part of the alleged money structuring offenses.

In *Huber*, the Eighth Circuit explained why such a tenuous connection is insufficient. In *Huber*, a farmer leased portions of his land to other individuals as part of a conspiracy to obtain

7

federal farm-program payments and crop-insurance benefits fraudulently. *Huber*, 404 F.3d at 1051-52. The farmer was found guilty of numerous offenses, including money laundering, and ordered to forfeit over five million dollars, which included the funds that were received as a result of the fraud. *Id.* at 1051-52, 1059. The Eighth Circuit reversed the portion of the forfeiture judgment that included crop-insurance subsidies paid by the government to insurers because those funds did not facilitate the underlying money laundering offense. *Id.* at 1059-61.

> Causally speaking, the premium subsidies and premium charges did allow the individuals to receive the crop-insurance benefits. After all, the government's role in this market is what makes this sort of insurance available to producers at reasonable rates, and premiums enable the insurer to pay the insureds' claims. But neither of these effects is sufficient to establish . . . facilitation because neither promotes the money laundering. They do contribute in some way to the procurement of the funds, but they do not make the further laundering of those funds any "less difficult or more or less free from obstruction or hindrance." *Hawkey*, 148 F.3d at 928. Huber and the other individuals simply did not use the funds . . . transferred between the government and the insurers to launder money. So these amounts were not recoverable through the forfeiture provisions because the funds were not involved in the money-laundering conspiracy within the meaning of [the forfeiture statute].

*Id.* at 1061.

Here, the convenience store may have enabled the Hassans to generate the revenue that was sent overseas, but those funds, unlike the funds forfeited in *Huber*, were not generated by an illegal conspiracy; and the fact that the store was used to generate money, some of which was sent overseas in transactions allegedly structured to avoid reporting, is insufficient to establish that the store facilitated the structuring because the store did not make the structuring of the financial transactions any less difficult or more or less free from hindrance or obstruction.

So far as the record shows, the convenience store is operated legally; its revenue is generated lawfully so that revenue does not constitute criminal proceeds. The Hassans have sent some of the

revenue from the store overseas, but in itself that is not illegal. The Hassans are charged with structuring transactions to avoid reporting, which is unlike money laundering in that it does not require underlying criminal conduct. *See* 18 U.S.C. § 1956. The Court is aware of no case in which a lawfully obtained and lawfully operated business was forfeited. The convenience store is not property that would be subject to forfeiture under § 853(a) in the event of a conviction for the crimes charged here. The government's motion for pretrial restraint of this property pursuant to § 853(e) is therefore denied.

**B.     The government has not proven that the Hassans intended to use the cash seized from their home to commit financial structuring offenses.**

Property may be subject to forfeiture when the government proves by a preponderance of the evidence that it was used or intended to be used to commit or facilitate the underlying offense. 21 U.S.C. § 853(a)(2); *United States v. Bieri*, 21 F.3d 819, 822 (8th Cir. 1994). Thus, if the government proved that the Hassans intended to use this money to commit their crimes, the money presumably would be subject to forfeiture under § 853(a)(2). The government has produced no evidence, however, to support its allegation that the Hassans intended to use the currency in this manner.

In its response to the defendants' motion for release of assets, the government asserts:

> [T]his money was located in a gym bag in their bedroom along with a spiral notebook containing a ledger believed to document the cash as undeclared proceeds siphoned from the convenience store owned by the defendants. In addition, in a shoebox located nearby, agents recovered a bundle of cash in the amount of $2,931 that contained a "post-it" note on which the names of both the remitter and payee were handwritten. This bundled cash fits the exact description of the structured transactions described by several bank tellers and charged in the indictment.

Thus, the government concludes, the currency seized from the Hassans' home is subject to forfeiture "because it was packaged in such a way as to demonstrate the defendants' intent to use it to purchase

9

additional checks in the exact manner as the numerous previous transactions."

The government's argument as to this issue suffers from two fatal flaws.  First, the government has presented no evidence to support its allegations concerning the items found in the Hassans' home.  Second, even if the government's statements were supported by evidence, such evidence would  support a finding that only a small portion of the money seized was intended for use in illegal transactions.

Mere suspicion that property was intended to be used in illegal activity will not support forfeiture of the property.  *See United States v. One 1976 Ford F-150 Pick-up VIN F14YUB03797*, 769 F.2d 525, 527 (8th Cir. 1985).  In *One 1976 Ford F-150 Pick-up*, the Eighth Circuit reversed a district court's holding that a defendant's truck was subject to forfeiture because it facilitated the defendant's drug offense, explaining:

> [N]o marijuana was found in the truck and there is but speculation to suggest it was to be used to transport marijuana in the future. . . .
> * * *
> We believe that the truck's direct connection to the illicit crop is simply too tenuous and far removed to support its forfeiture.  In fact, the government's proof shows little more than that the truck was seen on one occasion in the approximate area where marijuana was grown.  Mere suspicion of a vehicle's use in illegal activity will not suffice to support forefeiture [sic].  Moreover, "[f]orfeitures are not favored; they should be enforced only when within both the letter and spirit of the law."  *United States v. One Ford Coach*, 307 U.S. 219, 226, 59 S. Ct. 861, 865, 83 L. Ed. 1249 (1939).  Here, we cannot say that the truck was shown to have facilitated the illegal activity or was otherwise "substantially associated" with [the defendant's] marijuana farm.

*Id.* at 526-28.

The only evidence offered by the government is the FBI agent's affidavit, described above.  The affidavit reports the seizure of $101,054 from the Hassans' home but says nothing about the notebook, the post-it note, or the way the cash was packaged.   At the evidentiary hearing,

Linda Hassan testified as to the total amount of cash seized and the places in her home where various amounts of the cash were located.  She testified that $76,700 was located in a bag in her bedroom, that it represented revenue from the Hassans' convenience stores, and that a spiral notebook documenting the monthly income from the convenience stores was with the cash.[2]  She further testified that the remainder of the currency seized was made up of numerous other amounts of cash, ranging in value from $26 to $12,500, located in various parts of the house (including the pocket of her blue jeans).  She stated that most of these other amounts of cash represented either proceeds from money orders sold at the convenience stores, bundled with receipts, or money set aside to pay various bills, including two substantial bills from the oil company that supplied gas to the convenience stores.  Ms. Hassan acknowledged that part of the cash seized was a bundle containing $2,931 with a post-it note, but stated that that bundle of money belonged to her sister, Aisha Kattom.  Ms. Hassan did not know what the post-it note was for.

Generating revenue through the operation of convenience stores and keeping such funds and related records in one's home is not illegal.  The government has offered conjecture, but no evidence, that the cash seized from the Hassans' home is connected to the charged conspiracy.  Ms. Hassan's testimony shows that none of the cash except $2,931 was "packaged in such a way as to demonstrate the defendants' intent to use it to purchase additional checks" in illegally structured amounts.  Even if Ms. Hassan's testimony lacks credibility, the government has offered no evidence to the contrary,

---

[2]  Ms. Hassan later admitted that the notebook was written in Arabic and that she cannot read Arabic.  Even if this admission establishes that she lacked personal knowledge of the contents of the notebook and is therefore not competent to testify as to its contents, such testimony does not show that the notebook or the cash are linked to any illegal activity.  In any event, while the government has produced no evidence as to the contents of the notebook, the government apparently agrees with Ms. Hassan that the notebook documented the cash as proceeds of the convenience stores.

and the burden is on the government to show that the Hassans' assets are forfeitable.  *See Bieri*, 21 F.3d at 822.  The Hassans' motion for release of the $101,054 seized from their home is therefore granted.

Moreover, even if the government had presented evidence that the post-it note on the $2,931 bundle showed "the names of both the remitter and payee" for an intended check, such evidence would indicate, at most, that the Hassans planned to use the $2,931 bundle for a structured transaction.  It would not establish that the Hassans planned to use the rest of the money found in various locations in their home for illegal transactions.  The evidence as to the remainder of the money shows only that it was located in the approximate area where the $2,931 was found, which, as explained in *One 1976 Ford F-150 Pick-up*, is insufficient to support forfeiture.  Thus, even if the government had presented testimony or other evidence to support its allegations, only $2,931 of the $101,054 seized would be subject to forfeiture.

Finally, the Hassans' motion for release of assets also seeks the release of $2,460 seized from the home of Fuad and Hanan Hasan.  Because Eyad and Linda Hassan lack standing to seek the release of other defendants' assets, this part of the Hassans' motion is denied.  *See United States v. 1998 BMW "I" Convertible, VIN #WBABJ8324WEM20855*, 235 F.3d 397, 399 (8th Cir. 2000) ("To manifest standing in the forfeiture context, a claimant must first show an ownership interest in the property.").

## CONCLUSION

Because the government has not shown that the Hassans' convenience store and cash would be subject to forfeiture if the Hassans are convicted, these assets are not subject to pretrial restraint by the government.  The government's motion for protective order to preserve real property subject

to forfeiture and motion for writ of entry (Docket #51) is denied.  The government's motion to reopen the hearing on this matter, stated in it its brief regarding forfeitability of assets (Docket #90), is also denied.  The Hassans' motion for release of assets (Docket #65) is granted in part and denied in part.  This motion is granted as to the release of the $101,054 seized from the Hassans' home, but denied as to the release of the $2,460 seized from the home of Fuad and Hanan Hasan.

IT IS SO ORDERED this 27th day of July, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE